

See also 802 F.Supp. 539.

Phillip D. Buckley, Rudman & Winchell, Bangor, ME, for plaintiffs.

Evan M. Hanson, Preti, Flaherty, Beliveau & Pachios, Portland, ME, for defendant.

**Luis SANCHEZ, Jr., et al., Plaintiffs,**

v.

**SUNDAY RIVER SKYWAY CORP., Defendant.**

**Civ. No. 92–128–P–C.**

United States District Court, D. Maine.

Jan. 8, 1993.

**MEMORANDUM AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

GENE CARTER, Chief Judge.

The Court now has before it Defendant's Motion for Summary Judgment (Docket No. 13) on the two remaining counts of Plaintiffs' Complaint. Count I of the Complaint alleges that Sunday River was negligent in failing to groom and clear the trail. Count II alleges that Sunday River was negligent in failing to mark or pad an obstruction. For the reasons that follow, the Court denies the motion with regard to both counts.

## FACTS

On January 14, 1992, minor Plaintiff, Luis Sanchez, Jr., was seriously injured while skiing at Sunday River Ski Resort in Newry, Maine.[1] Luis Jr. was accompanied by his father, Luis Sanchez, Sr., and a family friend. Father and son were on their initial ski run of the day on a trail called "American Express" when Luis Jr. struck a patch of ice and fell, sliding downward on the slope. As Luis Jr. fell, his right leg hit an unmarked tree stump protruding from the snow.

## DISCUSSION

■ The Court has carefully reviewed the written submissions of the parties on the motion, and because the Court finds various outstanding issues of material fact which must be resolved, Defendant's Motion for Summary Judgment is denied. The issues of fact include, *inter alia,* whether the stump, which Sanchez hit, is included within the statutory meaning of a "danger[ ] inherent in the sport" of skiing within the meaning of Maine's Skiers' and Tramway Passengers' Responsibilities Act, 26 M.R.S.A. § 488 (1988).[2]

With regard to duties and responsibilities of skiers, ski area liability statutes can be divided into two categories: specific and general. Specific statutes list the risks which are considered inherent in the sport of skiing. These nonexclusive lists include items for which the skier expressly assumes, or shall be considered to have voluntarily assumed, the risk of loss or damage and for which there can be no recovery. *See, e.g.,* Mich.Comp.Laws Ann. § 408.342(2); N.H.Rev.Stat.Ann. § 225–A:24; Or.Rev.Stat. § 30.970. General statutes provide that inherent dangers exist in the sport of skiing and that skiers are deemed to have assumed the risk of such dangers. No list of what constitutes an inherent danger is included in these more general statutes. *See, e.g.,* Pa.Cons.Stat. Ann. § 7102(c); Vt.Stat.Ann. tit. 12 § 1037.

■ Maine's ski area liability statute is general, not specific. Thus, in order to decide the motion before the Court, the Court must determine whether a tree stump is, as a matter of law, a risk posed by an inherent danger of skiing under the Maine statute. This Court holds that the determination of whether something is a "danger[ ] inherent in the sport" of skiing, within the meaning of Maine's ski area liability statute, depends upon the factual circumstances surrounding the accident. The Court bases its conclusion on the legislative history of section 488, as well as the common law.

The original bill proposed to the Legislature in 1979, which sought to amend the Skiers' and Tramway Passengers' Responsibilities Act, included a list of inherent risks covering both manmade and naturally occurring conditions. The Legislature, however, never adopted the proposed bill: rather, it amended section 488 without listing inherent dangers. Immediately before the 1979 amendments passed, Representative Gwadosky made the following remarks on the record:

This bill is actually a much watered down version of the original bill which came before our Committee on Business Legislation and was one which met with quite a lot of opposition from some of the members of the committee in its original form.

The purposes of the bill aren't actually indicative of the title. The purpose of this bill was to change the liability from a ski area, a ski operator, to the skier. . . .

**1.** Sanchez is a resident of Massachusetts; Sunday River Skiway Corp., d/b/a Sunday River Ski Resort, is a corporation organized under the laws of Maine. Thus, the basis for jurisdiction in this case is diversity of citizenship, 28 U.S.C. § 1332 (1988).

**2.** 26 M.R.S.A. § 488 provides in pertinent part: Except as otherwise specifically provided in this subchapter, each skier who participates in the sport of skiing shall be deemed to have assumed the risk of the dangers inherent in the sport and assumed the legal responsibility for any injury to his person or property arising out of his participation in the sport of skiing, unless the injury or death was actually caused by the negligent operation or maintenance of the ski area by the ski area operator, its agents or employees.

I was personally opposed to this changing of liability because I felt it was eroding the responsibility of a ski area, it was eroding his obligation to keep up and maintain a safe place to ski. I also felt it was very dangerous precedent for us to be allowing certain exemptions, such as rocks, bare spots, stumps and trees. These are just a few of a long list of exemptions which were asked for by the ski areas so in case you were skiing on a trail and you happened to hit a rock or a tree or a stump protruding in the ski trail, you had to accept responsibility for hitting that because that was an inherent danger of a sport which you participated in. The bill has now been amended to eliminate most all objections, ... I feel the bill is now harmless without that laundry list of exemptions....

Legis.Rec. 1801 (1st Reg.Sess.1979). The intentional omission of language from the amendment defining inherent dangers buttresses the Court's conclusion that decisions regarding which risks are assumed by the skier should be determined on a case by case basis.

Common law further supports this Court's decision. In *Dillworth v. Gambardella*, 970 F.2d 1113, 1123 (2d Cir.1992), the Court of Appeals for the Second Circuit recently examined whether a collision that occurred between the parties on a ski slope was an inherent danger of skiing under Vermont's ski area liability statute. Vermont's ski area liability statute, like Maine's, does not include a list of inherent dangers of skiing. The *Dillworth* court held that whether such a collision constituted an inherent risk under Vermont's general statute was a question of fact for the jury. *See also Sunday v. Stratton Corp.*, 136 Vt. 293, 390 A.2d 398 (1978) (pre-statute decision: question whether concealed brush was an assumed risk inherent in skiing was a disputed issue of fact properly reserved for the jury). Cf. *Schultz & Lindsay Construction Co. v. Erickson*, 352 F.2d 425, 436 (8th Cir.1965) (question whether bridge work had been so inherently dangerous as to render general contractor liable for negligence of subcontractor is a question of fact for the jury to determine

under North Dakota law); *Vertentes v. Barletta Co.*, 16 Mass.App.Ct. 463, 467, 452 N.E.2d 271, 273 (1983) (error for trial court to instruct the jury that plaintiff's employment was, as a matter of law, inherently dangerous). Thus, whether the stump which Luis Jr. collided with was a risk posed by an inherent danger to participation in the sport of skiing under section 488 raises a question of fact for a jury to determine.

Accordingly, it is hereby ORDERED that Defendant's Motion for Summary Judgment be, and is hereby, DENIED.

SO ORDERED.