MacDonald, D. Lloyd, J.
Before the Court is the motion of the Defendant Simon Property Group, LP (“Simon”) for summary judgment. The motion is ALLOWED for the reasons that follow.
Pertinent Facts
Simon is the property manager of the Square One Mall in Danvers (the “Mall"). Simon routinely opens the mall at 5:30 a.m., i.e., before regular store hours, to the public for purposes of walking in its covered spaces. On Sunday morning, February 18, 2001 the plaintiff Gladys Nitishin (“Plaintiff”) was walking in the mall with a friend before the stores (other than one establishment in a food court) were open for retail *348 business. The Plaintiff regularly walked in the Mall on weekends, and there is no dispute as to the fact that she was at the Mall on the day of her accident exclusively for purposes of recreational walking, as opposed to, for example, being there to window shop.
Among the commercial tenants at the Mall was a Sam Goody music store operated by the defendant The Musicland Group, Inc. (“Musicland”). At around the time that the Plaintiff and her companion were walking around the Mall’s two levels, Musicland was holding a meeting of its Sam Goody employees in the store. The meeting was breaking up at the time the Plaintiff approached the public area adjacent to the Sam Goody store. Some store employees were congregating in the public area, and there was evidence of “jostling” among certain of the employees. As the Plaintiff passed the assembled Sam Goody employees, one of the employees jumped back, and his boot caught the plaintiffs leg, causing her to sustain serious injury.
Among the service providers engaged by Simon as the manager of the Mall was a security firm, the defendant Control Security Services, Inc. (“Control Security”).
Simon moves for summary judgment on two theories. The first is that it is entitled to the limited liability protections of the Recreational Use Statute, G.L.c. 21, §17C. Simon’s theory is that because Simon opened the Mall to the public’s recreational use, it may be liable only upon proof of willful, wanton or reckless conduct and that no reasonable interpretation of the facts before the Court could support such a conclusion. Simon’s second theory is that even under a conventional negligence standard, no reasonable jury could conclude that Simon breached its duty of care in the circumstances comprising the factual record.
The Plaintiff and Control Security oppose the motion, with the Plaintiff, however, acknowledging the “creative! ]” nature of Simon’s recreational use argument. The Court concludes that, in this instance, creativity is entitled to a just reward.
The Summary Judgment Standard
Summary judgment shall be granted where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Comm’r of Correction, 390 Mass. 419, 422 (1983). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). “If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a material fact in order to defeat the motion.” Pederson, 404 Mass. at 17. Conclusoiy statements or argumentative assertions will not suffice. Key Capital Corp. v. M&S Liquidating Corp., 27 Mass.App.Ct. 721, 727-28, rev. denied, 406 Mass. 1101 (1989) (finding insufficient “bare assertions and conclusions regarding the [party’s] understandings, beliefs and assumptions”).
Discussion
1. The Recreational Use Issue
It is important at the outset to stress the nature of the undisputed facts in the record: The Plaintiff was on the premises exclusively for purposes of walking; she was there at a time (after 5:30 a.m. and before regular store hours) when the Mall — through a deliberate decision of its manager, Simon — was open to people in the Plaintiffs circumstances for the purpose of walking, and the Plaintiff was injured as she was walking by the Musicland store in an area of the Mall open to the public for such purposes.
G.L.c. 21, §21C (the Recreational Use Statute) provides in pertinent part: “Any person having an interest in land including the structures [and] buildings . . . attached to the land . . . who lawfully permits the public to use such land for recreational. . . purposes without imposing a charge or fee therefore . . . shall not be liable for personal injuries . . . sustained by such members of the public ... in the absence of willful, wanton or reckless conduct by such person.” The statute further provides that the “term, ‘person’ as used in this section shall be deemed to include the person having an interest in the land, his agent, manager, or licensee . . .”
It is clear that Simon, as the Mall’s manager, is a “person” within the statute. And the explicit purpose of the statute is “to encourage landowners to permit broad, public, free use of land for recreational purposes by limiting their obligations to lawful visitors under the common law.” Ali v. City of Boston, 441 Mass. 233, 238 (2004).[1] It is reasonable to conclude that if the Court were to hold that the statute applies to the facts of this case, its decision would, in fact, encourage mall owners to open their properties to designated recreational use. As such, a finding for Simon would further the legislative purpose of the Recreational Use Statute.
However, the stickier question is whether the statute can be reasonably construed to apply to the commercial mall setting, which, as the Plaintiff argues in her opposition, is a distant ciy from “typical recreational activities” in “parks and fields.” However, the Court takes judicial notice of the circumstance that large-scale malls have transformed the American landscape and that the “mall walking” engaged in here by the Plaintiff has become a common feature of modern life. Even if walks in public parks are not a *349 thing of the past, a parallel custom of walks in the Nation’s malls appears to have developed.
Presumably, in order to make sure that the Recreational Use Statute was construed sufficiently broadly to permit the statute’s underlying purpose to be achieved in practice, the SJC in Ali held that an objective, not a subjective, test would determine whether a particular activity was “recreational.” 441 Mass. at 238. And the Appeals Court in Catanzarite v. City of Springfield, 32 Mass.App.Ct. 967 (1992), emphasized the breadth of the definition: “ ‘Recreation’ in its most natural signification means ‘refreshment or diversion.’ Webster’s New Collegiate Dictionary 966 (1977).” And refreshment and diversion is what the record in this case establishes the Plaintiff to have been engaged in as she strolled on her regular early morning walk with her companion in Simon’s Mall.
The facts here fit comfortably within the literal text of the statute: At the time of her injury, the Plaintiff was engaged in recreation, she was doing so on private property, and the property was opened to the public with no fee being charged in order to permit the kind of recreational use being made of the properly by the Plaintiff.[2]
Accordingly, the standard gauging Simon’s liability is that of willful, wanton and reckless conduct. And for the reasons outlined in more detail below, there is no evidence in the summary judgment record upon which a reasonable jury could conclude that Simon engaged in such conduct.
2. The Negligence Issue
The Court further concludes that even if the Recreational Use Statute is not applicable, a jury could not reasonably conclude that Simon was negligent on the facts in the record before the Court.
As earlier noted, in the summaiyjudgment context, “[i]f the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a material fact in order to defeat the motion.” Pederson v. Time, Inc., supra, 404 Mass. at 17. Here, the sole evidence advanced by the Plaintiff in the summaiyjudgment record that would support a juiy’s finding of negligence by Simon is the fact that Simon was the manager of the Mall and that it did not set up protocols to regulate mall walking on the premises. However, there is no reason to believe that if Simon had established detailed rules and regulations, the Plaintiff — on the factual record before the Court— would not have been injured as she was.
Further, it is undisputed that pursuant to its management function, Simon contracted with Control Security to provide security services to the Mall. Thus, at the threshold, Simon is entitled to the benefit of the general principle that “the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants.” Restatement (Second) ofTorts, §409 (1964). See Santella v. Whynott, 27 Mass.App.Ct. 451, 453 (1989).[3]
The record further establishes, again without contradiction, that within the scope of the services Control Security was retained as an independent contractor to provide security services, i.e., oversight of the premises to protect the safety and well-being of those lawfully in the Mall. The Plaintiff, of course, falls within the latter class. And in the light most favorable to the Plaintiff, the percipient circumstances giving rise to the accident discloses that she was injured after the adjournment of a meeting of a tenant store’s employees (lawfully assembled) by the act of a single store employee where nothing more than incidental “jostling” among the employees departing from the meeting had been observed prior to the accident.
Simon, having taken the precaution of engaging a security firm for the Mall properly, is entitled to a reasonable expectation that Control Security would, in fact, perform as contracted unless the evidence supports a contrary inference. See generally, Ducey v. Springfield Co-Operative Bank, 341 Mass. 449, 450-51 (1960). However, the summaiyjudgment record shows that while the adequacy of Control Security’s patrol and oversight services on the morning of the accident are in dispute, there is no evidence that would support a conclusion that Simon was negligent in hiring Control Services. Nor is there any evidence that Control Security’s failure to have performed its security function on the day in question was such that Simon, as the Mall’s manager, should — in its supervisoiy capacity — have been aware of Control Security’s lapses and taken further measures to protect the safety of those like the Plaintiff who were lawfully in the Mall. See Restatement (Second) ofTorts, §§411-14 (1964). See Vertenes v. Barletta Co., 16 Mass.App.Ct. 471, (1983), aff'd, 392 Mass. 165 (1984).[4]
The risk of injuiy to the Plaintiff in the circumstances that unfolded was so remote that Simon could not have reasonably foreseen them. Foley v. Boston Housing Authority, 407 Mass. 640, 646 (1990). Accordingly, an essential element of negligence is lacking on the record before the Court. See Rae v. Air Speed, Inc., 386 Mass. 187, 193 (1982).
ORDER
The defendant Simon Property Group LP’s motion for summaiyjudgment is ALLOWED.

 In a footnote the Ali court observed that the bill from which the Recreational Use Statute emerged was titled, “An Act encouraging landowners to make land available to the public for recreational purposes by limiting liability in connection with such use.” Id. at 237, n.6.

 Other courts that have considered the application of the Recreational Use Statute (or its equivalent) have stressed the fact-specific nature of the inquiiy to determine the application ofits limited immunity provision. See, e.g., Crichpeld v. Grand Wailea Co., 93 Hawaii 477 (2000) (members of the public allowed to “roam” on hotel ocean-side property): Wallace v. *350 Metropolitan Pier and Exposition Authority, 302 Ill.App.3rd 573 (1998) (public allowed on the outer dock of Chicago’s Navy-Pier park); and DiMella v. Gray Lines of Boston, Inc., 836 F.2d 718 (1st Cir. 1988) (injury sustained while in the public area of the Charlestown Navy Yard).

 Further quoting the Restatement, however, the Santella court cautioned that “because there are so many exceptions to this general rule, the rule itself has been described as a ‘preamble to the catalog of its exceptions.’ ’’ Id. (citations omitted). For the reasons that follow, however, there is no basis in the record here to find that any of the exceptions apply.

 Among the undisputed facts included in the Simon’s, Plaintiffs and Control Security’s summary judgment papers are:
The incident was “unexpected” as [Plaintiff] had no warning before the contact with the man who stepped on her. (Undisputed Fact #9.)
During her first lap [Plaintiff took two laps], the Plaintiff observed what she thought was a meeting going on in the Sam Goody/Suncoast store, but did not observe any commotion outside the store. (Undisputed fact #11.)
It was not until the Plaintiff and her walking companion were close to the group that she claims she saw them “jostling” or engaging in “animated conversation.” (Undisputed fact #12.)
The Plaintiff testified the group was not “rowdy.” (Undisputed fact #13.)
Athough the Plaintiff claims that she was concerned about how she was going to get past the group to continue on her walking path, it “didn’t occur to [her]” that she could be injured by a member of the group. (Undisputed fact #14.)
There was nothing about the group’s activities prior to the incident that caused her to change her course or turn around, and there was nothing that made her concerned about passing them. (Undisputed fact # 15.)
In Musicland’s papers, facts numbered 9,11 and 12, above, were disputed. However, Musicland failed to reference any contrary evidence in the record with regard to the propositions of fact.