JOSEPH V. McDONOUGH'S (dependent's) CASE.

Suffolk. October 8, 2003. - December 22, 2003.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Workers' Compensation Act,* Right to compensation, Dependency compensation, Coverage, Decision of Industrial Accident Reviewing Board.

This court concluded that the plain language of § 35C of the Workers' Compensation Act, G. L. c. 152, did not support the payment of compensation to the widow of a worker who died because of exposure to asbestos in the workplace, where the worker had voluntarily retired from the workforce, taking his pension as a lump sum; did not reenter the work force between the time of his retirement and the onset of his illness; and was not in receipt of any stream of earnings-related income at the time of his death. [605-608]

APPEAL from a decision of the Industrial Accident Reviewing Board on January 24, 1997.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Richard W. Jensen* for the insurer.

*Franklin Lewenberg* for the claimant.

CORDY, J. Joseph V. McDonough (employee) worked for the Boston Edison Company from 1961 until his voluntary retirement in 1991. He was diagnosed with a metastatic adenocarcinoma and asbestosis four and one-half years after he retired from the company, and died soon afterward. His widow, the claimant, made a claim for benefits under § 31 of the Workers' Compensation Act, G. L. c. 152, which provides for compensation to certain survivors of workers who die because of an injury suffered in the course of their employment. An administrative judge of the Department of Industrial Accidents (department) determined that the employee was exposed to asbestos fibers at work prior to December, 1978, and that his employer was liable under the workers' compensation system, but denied

§ 31 benefits because the employee voluntarily had retired and had no earnings in the year preceding his death. The reviewing board of the department reversed the administrative judge's denial of § 31 benefits, ordering payment "at rates mandated by § 35C and 452 Code Mass. Regs. § 3.02." The employer's insurer appealed from the board's decision, and we transferred the case from the Appeals Court on our own motion. We vacate the board's decision, concluding that the plain language of G. L. c. 152, § 35C, does not support the payment of compensation to the claimant, and that, to the extent that 452 Code Mass. Regs. § 3.02(1) (1999) would provide otherwise, the regulation is invalid.

*Discussion.* In Res. 1910, c. 120, the Legislature established the Massachusetts commission on compensation for industrial accidents to "determine upon a plan of compensating employees for injuries received in the course of their employment." This was "the logical outcome of a long-continued and increasing demand for the modification or abandonment of the common-law remedies as applied to the relationship of employers and injured employees." Report of the Commission on Compensation for Industrial Accidents 14 (July 1, 1912). Since enacted in St. 1911, c. 751, the Massachusetts workers' compensation scheme has been conceived as a mechanism by which workers can recover a portion of that income that they are kept from earning because of an injury suffered while working. See generally L. Locke, Workers' Compensation 1-11, 18-22 (L.Y. Nason, C.W. Koziol, & R. Wall Supp. 2002); L. Locke, Workmen's Compensation 1-15, 22-26 (2d ed. 1981). Since 1911, we have been consistent in our efforts to give effect to this purpose. See, e.g., *Letteney's Case,* 429 Mass. 280, 282 (1999) ("our workers' compensation law was conceived as a system of insurance to replace in part the wages lost by workers or their dependents as a result of injuries suffered in connection with their work"); *Tobin's Case,* 424 Mass. 250, 253 (1997) ("workers' compensation law was designed to provide wage-loss protection to employees who are injured on the job and incur a loss of earning capacity from the injury"); *Ahmed's Case,* 278 Mass. 180, 183 (1932) ("[workers'] compensation . . . is by way of relief from inability to earn, or for deprivation of support flowing

from, wages theretofore received by the employee"). While we are careful not to "read into [the workers' compensation statute] by implication or enlargement provisions not fairly within its terms," *Moran's Case*, 234 Mass. 152, 155 (1919), and note that "its express provisions cannot be extended beyond their reasonable import," *id.*, we recognize that it "is to be construed broadly . . . in the light of its purpose and . . . to promote the accomplishment of its beneficent design," *Johnson's Case*, 318 Mass. 741, 746 (1945). We interpret G. L. c. 152, §§ 31 and 35C, an integral part of the workers' compensation scheme, in light of these principles.

Section 31 of G. L. c. 152 provides for payment to the dependents of an employee who dies as the result of an injury.[1] "[D]ependents of the employee . . . wholly dependent upon his or her earnings for support at the time of his or her injury, or . . . death" may receive weekly payments amounting to two-thirds of the deceased employee's wages.[2] G. L. c. 152, § 31. Section 35C provides that "[w]hen there is a difference of five years or more between the date of injury and the initial date [of] eligib[ility] for benefits under section thirty-one . . . the applicable benefits shall be those in effect on the first date of eligibility for benefits." Thus, § 31 is the doorway to compensation, and in cases in which at least five years have elapsed between injury and eligibility, § 35C is the mechanism by which the amount of compensation is calculated.

In cases of latent injury, the date of injury is the date of last exposure. See *Squillante's Case*, 389 Mass. 396, 397 (1983). Here, the administrative judge determined that the date of last exposure was December, 1978, and we accept the judge's

---

[1]"If death results from the injury, the insurer shall pay the following dependents of the employee, including his or her children by a former spouse, wholly dependent upon his or her earnings for support at the time of his or her injury, or at the time of his or her death, compensation as follows . . . . To the widow or widower, so long as he or she remains unmarried, a weekly compensation equal to two-thirds of the average weekly wages of the deceased employee . . . ." G. L. c. 152, § 31.

[2]We note that a wife is "conclusively presumed to be wholly dependent for support" on a husband with whom she lives at the time of his death. G. L. c. 152, § 32 (*a*). This presumption applies in favor of the claimant.

finding.[3] See *Scheffler's Case*, 419 Mass. 251, 258-259 (1994). The date of eligibility for benefits under § 31 is the date of death, here May 10, 1996. Thus, in this case, nearly two decades passed between the date of injury and the date of eligibility, so § 35C applies.

Following the § 35C instruction that "the applicable benefits shall be those in effect on the first date of eligibility for benefits," the compensation available to the claimant is two-thirds of her husband's wages on the date of his death. See G. L. c. 152, § 31. On that date, he had no wages, however they might be defined. The claimant's husband voluntarily retired from the workforce at age sixty-five in 1991. He did not reenter the workforce between the time of his retirement and the onset of his illness, and there was no evidence that he had any intention of ever doing so. When he retired, he took his pension as a lump sum, and was not in receipt of any stream of earnings-related income at the time of his death. In these circumstances, § 35C provides no benefits to the claimant. This result, while appearing harsh, is consistent with the purpose of the workers' compensation law: workers' compensation is an earnings-replacement or wage-loss protection mechanism, not a life insurance scheme. Cf. *Aetna Life & Cas. Ins. Co.* v. *Commonwealth*, 50 Mass. App. Ct. 373, 377 (2000), quoting *Zerofski's Case*, 385 Mass. 590, 594 (1982) (" '[P]urpose of [workers' compensation] is to treat the cost of personal injuries incidental to . . . employment as a part of the cost of business.' . . . 'It is not a scheme for health insurance' "). Here, there was no loss of earnings, and, consequently, no replacement benefits were warranted.

That § 35C is ameliorative in nature does not aid the claimant. As we explained in *Letteney's Case, supra* at 282, G. L. c. 152, § 35C, inserted by St. 1985, c. 572, § 45, reversed the result in *Squillante's Case, supra*. In the latter case we held that compensation for an employee incapacitated from work in 1974 by asbestosis that he developed as the result of exposure

---

[3]The administrative judge made this determination on the basis of the latency period of asbestosis and on air quality tests taken on December 12, 1978. Those tests, taken after the Boston Edison Company instituted certain safety measures, detected no airborne asbestos fibers.

in 1945 was to be calculated on the basis of his wages on the date of injury (the last exposure in 1945), not the date of incapacity. *Squillante's Case, supra* at 396-397. Were the facts in *Squillante's Case* to arise under the new § 35C scheme (which applies to incapacity as well as death), the compensation would have been calculated on the basis of his much higher wages in 1974. In this sense, § 35C indeed is ameliorative. That it is ameliorative, however, does not mean that we may ignore its express terms to allow for payments where no right to payments exists. Cf. *Moran's Case, supra.*

To the extent that the board reaches a different result by applying the provisions of 452 Code Mass. Regs. § 3.02(1), that application is misplaced. The regulation instructs that, if there are no earnings on the date of eligibility, the benefits determination under § 35C should be calculated from the employee's average weekly wage as of his last date of employment.[4] We recognize that, in circumstances not present here, this regulation could be construed and applied in a manner consistent with the meaning and purpose of the statute, and therefore the regulation is not invalid for all purposes.[5] See *Beth Israel Hosp. Ass'n* v. *Board of Registration in Med.*, 401 Mass. 172, 183 (1987). Cf. *Berrios* v. *Department of Pub. Welfare*, 411 Mass. 587, 595 (1992) ("regulations are . . . void [if] their provisions cannot *by any reasonable construction* be interpreted in harmony with the legislative mandate" [emphasis added]). However, as applied by the board in the circumstances of this case, the regulation provides benefits that exceed those intended by the statutory scheme and authorized by § 35C. Insofar as the regulation is in conflict with the terms of the statute, it is invalid. *Beth Israel Hosp. Ass'n* v. *Board of Registration in Med., supra* at 182-183. See G. L. c. 152, § 5 ("commissioner shall promulgate

---

[4] "For purposes of [G. L. c. 152, § 35C], applicable benefits on the first date of eligibility for benefits shall be based on the employee's average weekly wage as of such first date of eligibility for benefits, or, if the employee is not employed on that date, it shall be based on the employee's average weekly wage as of the employee's last date of employment." 452 Code Mass. Regs. § 3.02 (1) (1999).

[5] Such a circumstance might arise if, for example, an employee's lack of wages at the time of his death was fortuitous and temporary, rather than voluntary and permanent.

. . . regulations consistent with this chapter"). Cf. *Corriveau* v. *Home Ins. Co.*, 43 Mass. App. Ct. 924 (1997) (holding unenforceable a regulation that would have provided greater workers' compensation benefits than permitted by statute).

Neither the "beneficent design" of workers' compensation generally nor the ameliorative nature of one of its provisions may trump the plain language and purpose of the statute. The decision of the reviewing board is vacated. This case is remanded to the department for further proceedings consistent with this opinion.[6]

*So ordered.*

---

[6] We note that § 31 provides a minimum benefit to the spouse of a deceased employee, apparently regardless of the actual wages earned on the date of eligibility or of the formula set forth in § 35C. While neither party has raised the point, we assume that whether this benefit is available to the claimant will be considered on remand.